# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHARLES E. DUNCAN,

       Petitioner,
:

Case No. 3:09-cv-078

:

   -vs-

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

TIM BRUNSMAN, Warden,

:

       Respondent.

---

**DECISION AND ORDER DENYING PETITIONER'S RENEWED MOTION FOR EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL; REPORT AND RECOMMENDATIONS**

---

### Motion for an Evidentiary Hearing

This habeas corpus case is before the Court on Petitioner's Renewed Motion for Evidentiary Hearing and Appointment of Counsel (Doc. No. 18). The Magistrate Judge denied Petitioner's original Motion for Evidentiary Hearing and Appointment of Counsel because it did not comply with the requirements of 28 U.S.C. § 2254(e)(2), which is applicable to requests for evidentiary hearing in habeas corpus since adoption of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). The two barriers to a hearing which the Court identified as to the first Motion were failure to show (1) which facts would be presented at a hearing and (2) how the Petitioner had exercised due diligence in attempting to present those facts to the state courts.

In his Renewed Motion, Petitioner explains that he would offer his own testimony at the hearing and that of retired Springfield Police Detective Estep, the officer Petitioner claims unconstitutionally reinitiated discussion of the case with him after he had unequivocally asserted his desire for an attorney. As to why Estep's testimony was not presented to the state courts, Petitioner claims Estep had retired at the time of the suppression hearing and left the country, traveling to Iraq on a training mission for Iraqi police, and remaining abroad until after the statute of limitations had run for filing a petition for post-conviction relief.

Petitioner himself had a full opportunity to testify at the suppression hearing and was represented there by counsel who has never been claimed to have provided ineffective assistance. Obviously, if there was some crucial fact that Petitioner can testify to now but which was not part of the state court record on direct appeal, there was nothing to prevent Petitioner from presenting that evidence at the suppression hearing in his own affidavit in support of a post-conviction petition. Petitioner cannot now testify to any fact he did not place before the state courts and indeed he does not suggest he would have any additional facts to testify to.

As to Detective Estep, according to Petitioner's Affidavit, he learned that Estep would be in Iraq for a year, ending in September, 2007. He sent "several" letters to Estep in care of the Springfield Police Department, asking for an affidavit "clarifying the circumstances leading up to my interrogation, None of these letters was ever responded to or sent back to me as undeliverable." (Affidavit attached to Doc. No. 18 at 1.) Despite this lack of response and any other proof that Estep would do so, Petitioner claims that Estep would now admit to reinitiating the interrogation. (Motion, Doc. No. 18. at 14.)

The crime in suit and the interrogation which is in issue both occurred on May 6-7, 2006.

At the time of the motion to suppress hearing in September, 2006, Detective Estep had already retired and was in Iraq (Motion to Suppress Transcript at 53, Exhibit to Return of Writ, Doc. No. 9.) During the motion to suppress hearing, Detective Dewine, who is testifying, refers to a report Detective Estep made to his supervisor, a Lieutenant Hill, in which Estep says that Petitioner, while being escorted from the interview room to a holding cell, said to Estep that "he wanted to talk without the presence of a lawyer." *Id*. at 57. Dewine testifies further he (Dewine) did nothing by way of promise or threat to reinitiate the conversation. *Id*. at 58.

Although Detective Estep's statement that Petitioner reinitiated the conversation is hearsay, no objection was made to its admission. There was thus competing evidence before the trial court on whether Estep or Petitioner reinitiated the conversation and there was nothing so compelling about Petitioner's testimony that the trial judge was bound to accept it. Furthermore, Petitioner's belief that Detective Estep will now repudiate his report and "testify truthfully to the fact that he initiated the conversation" (Affidavit at 2) is purely speculative. He refers at several points to Estep as an adverse and possibly hostile witness, *Id*. Why should this Court believe, without any evidence, that Detective Estep will now admit he falsified his report to his superior and confirm Petitioner's claim?

The AEDPA does not compel a habeas court to hold an evidentiary hearing on the speculation of a petitioner that a key witness will change his testimony. Therefore the Renewed Motion for Evidentiary Hearing and the dependent request for appointment of counsel are denied.

## Report and Recommendations

The Petition avers that Mr. Duncan was convicted of murder by a jury in the Clark County Common Pleas Court and sentenced to life imprisonment with parole eligibility after fifteen years, plus an additional one year on a firearm specification. He pleads the following grounds for relief:

> **Ground One:** Petitioner is being held in violation of his Fifth Amendment right to counsel.
>
> **Ground Two:** Petitioner is being held in violation of the Self-Incrimination Clause of the Fifth Amendment.
>
> **Ground Three:** Petitioner is being held in violation of the Due Process Clause of the Fifth and Fourteenth Amendments

(Petition, Doc. No. 2.)

All three of these Grounds for Relief were raised on direct appeal to the Clark County Court of Appeals which decided them on the merits. *State v. Duncan,* 2007 WL 2285087 (Ohio App. 2nd Dist. Aug, 3, 2007). Petitioner timely sought review in the Ohio Supreme Court, but that court declined to exercise jurisdiction. *State v. Duncan,* 116 Ohio St. 3d 1457 (2007). This Petition timely followed.

### Grounds One and Two

Petitioner's first and second grounds for relief were raised as his first and second assignments of error in the Clark County Court of Appeals, which decided them as follows:

> First Assignment of Error
>
> {¶ 9} "There was error in the lower court in overruling Defendant's motion to suppress his statement and the taped interview in that

Defendant did not make a knowing voluntary and intelligent waiver of his constitutional rights."

Second Assignment of Error

{¶ 10} "There was error in the lower court in overruling Defendant's motion to suppress his statement, given after Defendant requested a lawyer, thereby denying him right to counsel guaranteed by the fifth and sixth amendment to the Constitution of the United States and Article One Section 10 of the Ohio Constitution."

{¶ 11} In these assignments, Duncan argues first that the waiver of his Miranda rights was not voluntary, and second, that prior to the second interview and after his Miranda waiver, he still manifested a desire to have an attorney present prior to making a statement.

{¶ 12} The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59, 647 N.E.2d 851; State v. Ferguson, Defiance App. No. 4-01-34, 2002-Ohio-1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts. Vance, 98 Ohio App.3d at 59.

{¶ 13} In its findings of facts, the trial court found that "the defendant unequivocally invoked his right to an attorney prior to the [first] interview * * * [and] the detectives immediately ceased questioning and returned the defendant to the holding cell." The trial court further found that prior to the second interview, "which the defendant was responsible for initiating * * * he * * * signed a waiver form after being re-advised of his rights." Finally, the trial court found that after this waiver, "the defendant was not clear that he wanted an attorney present prior to making a statement. He simply began making a statement without counsel."

{¶ 14} A review of the record confirms that there is sufficient competent credible evidence from which the trial court could make these findings of fact.

{¶ 15} In order for a statement made by the accused to be admitted in evidence, the state must prove that the he made a voluntary, knowing, and intelligent waiver of his Fifth Amendment right against self-incrimination. State v. Edwards (1976), 49 Ohio St.2d 31, 38, 358 N.E.2d 1051, reversed on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155; State v. Winterbotham, Greene App. No. 05CA100, 2006-Ohio-3989, ¶ 30. In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Brewer (1990), 48 Ohio St.3d 50, 58, 549 N.E.2d 491; Winterbotham, supra; State v. Connors-Camp, Montgomery App. No. 20850, 2006-Ohio-409, ¶ 35.

{¶ 16} Duncan asserts that the state failed to provide an attorney for him when he unequivocally asserted his right to counsel; that thereafter he was placed into a dark holding cell for four hours, which constituted physical deprivation; that the police first advised him that Bobbi Jo had "made it" and then later informed him that she had died; and that the police initiated the subsequent interview by asking Duncan whether he then wished to make a statement. However, the trial court made findings of fact that Duncan initiated the subsequent interview, not the police. The testimony of Detective DeWine supports this finding. Also, the only evidence that the police first told Duncan that Bobbie Jo had made it was from Duncan himself, and this is contrary to the testimony of Detective DeWine. Apparently the trial court chose to believe Detective DeWine in this respect as well. Furthermore, merely holding a suspect in a holding cell at police headquarters for four hours during the night absent any other factors, does not constitute physical deprivation or mistreatment.

{¶ 17} Because we review the voluntariness of a Miranda waiver de novo, we must independently determine whether the totality of the circumstances surrounding the confession indicates that a defendant's "will was overborne and his capacity for self-determination was

critically impaired because of coercive police conduct." State v. Otte (1996), 74 Ohio St.3d 555, 562, 660 N.E.2d 711, citing Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 and State v. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus. Given the facts of this case, we cannot say Duncan's written and recorded waiver of his Miranda rights and his subsequent statements were the result of coercion and duress. Instead, the totality of the circumstances supports the conclusion that Duncan made these statements on his own accord.

{¶ 18} Second, Duncan asserts that, after he executed the waiver of his Miranda rights, he thereafter again unequivocally manifested a desire to have a lawyer present before making his statement. This claim is however belied by the tape-recorded interview.

{¶ 19} Duncan focuses on the a colloquy between himself and Detective Estep where in response to Estep's question whether Duncan wanted to now talk to them without a lawyer, Duncan answered: "no. I want a lawyer first * * *." However, in considering this evidence, we must look at the entire conversation and what occurred thereafter. After Detectives DeWine and Estep gave Duncan his rights and he signed the waiver form, the following conversation occurred:

{¶ 20} "THE DEFENDANT: I want to tell you guys exactly what happened.

{¶ 21} "DETECTIVE ESTEP: We'll just-you understand your rights.

{¶ 22} "THE DEFENDANT: I understand them.

{¶ 23} "DETECTIVE ESTEP: Okay. And you did-you did say you wanted a lawyer, but you're-you're saying now you do not want one. And you want to talk to us.

*4 {¶ 24} "THE DEFENDANT: No. I want a lawyer first, but I want to make a statement. Well, never mind. There ain't nothing going to

help me now. I'm going to-(Inaudible.)

{¶ 25} "DETECTIVE ESTEP: I mean, is-you're going to be charged, yeah. I mean, there's no-

{¶ 26} "THE DEFENDANT: So I'm going to prison-or jail tonight?

{¶ 27} "DETECTIVE ESTEP: We don't-without talking to you, we have no idea what-what went on out there. I mean-

{¶ 28} "THE DEFENDANT: I can't believe I'm sitting here.

{¶ 29} "DETECTIVE ESTEP: But you're-you've already messed us all up again. You said you wanted a lawyer anymore. I-I don't want what you want.

{¶ 30} "THE DEFENDANT: I can't even believe I'm-I'm just sitting here talking to you guys. We were a loving family earlier today.

{¶ 31} "DETECTIVE ESTEP: I understand that.

{¶ 32} "THE DEFENDANT: And now all this shit happened, and she's gone. I don't-I want to make a statement.

{¶ 33} "DETECTIVE DEWINE: Okay. Well, if you want to make a statement, we'll just let you, you know, just tell us what you want to tell us. Then we'll go from there. All right?

{¶ 34} "THE DEFENDANT: All right.

{¶ 35} "DETECTIVE DEWINE: All right."

> {¶ 36} Thereafter, Duncan went into a narrative as to the events of the evening, stating that he pulled the trigger of the gun, shooting Ms. Pyles, but claiming that it was an accident.
>
> {¶ 37} Viewing this evidence in the context of its totality, Duncan made his statement knowingly, understandingly and voluntarily, and he did not unequivocally manifest a desire to have an attorney present prior to making the statements.
>
> {¶ 38} Duncan's first and second assignments of error are overruled.

2007 WL 2285087, ¶¶ 9-38.

After adoption of the AEDPA, when a state court rules on the merits of a federal constitutional claim, a federal habeas corpus court reviewing that decision must defer to it unless it is contrary to, or an objectively unreasonable application of, clearly established law as set forth in the holdings of the United States Supreme Court. *Terry Williams v. Taylor*, 529 U.S.362 (2000). The federal court must defer to any findings of fact unless the habeas petitioner rebuts them by clear and convincing evidence. *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).

As the Court of Appeals' opinion shows, there was competent credible evidence from which the trial judge could reasonably have found, as he did, that the Springfield Police did not deny Petitioner his right to an attorney and that his waiver of his right to remain silent was knowing, intelligent, and voluntary.

As a matter of law, the rights to remain entirely silent and to counsel before any questioning by the police are clearly established in Supreme Court precedent. *Miranda v. Arizona*, 384 U.S. 436 (1966). However, if a suspect initiates the conversation even after invoking his right to counsel by demonstrating a generalized desire to discuss the investigation, he has waived those two rights.

*Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). There is no real dispute about the facts of Petitioner's statement, which was video-recorded, or the fact that he was held for several hours prior to his making his statement. The police plainly had probable cause to arrest him, either for felonious assault or for some degree of homicide, with or without a statement, and the four hours or so were in the middle of the night when it was unlikely there was a judge of the Springfield Municipal Court before whom he could be brought.

The Court of Appeals' decision cites state precedent, but a state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. §2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. *Early v. Packer*, 537 U.S. 3 (2002)(per curiam)(In order to avoid being contrary to Supreme Court precedent, a state court decision need not cite the controlling precedent or even be aware of it "so long as neither the reasoning nor the result of the state-court decision contradicts them.") It is sufficient if the result and reasoning are consistent with Supreme Court precedent. *Slagle v. Bagley*, 457 F.3d 501 (6th Cir., 2006), citing *Early v. Packer, supra.*

Petitioner asserts that whether he initiated the further conversation is not a pure question of fact but rather "a legal question which requires applying a legal standard to basic, primary, or historical facts. . ." (Reply, Doc. No. 15.) Petitioner cites *Van Hook v. Anderson,* 488 F.3d 411 (6th Cir. 2007), where the court held in this regard:

> Whether a suspect clearly and unequivocally asked for counsel, and whether the suspect initiated discussions with police after asking for counsel, are ultimately legal questions. *United States v. Whaley*, 13 F.3d 963, 966, 968 (6th Cir. 1994). The underlying questions of "what happened"-i.e., "basic, primary, or historical facts"-are, however, findings of fact that are presumed correct unless rebutted with clear and convincing evidence. *Thompson v. Keohane*, 516 U.S. 99, 110-13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); cf. *Whaley*, 13

> F.3d at 968 ("While we accept, unless clearly erroneous, the facts that the district court found, whether those facts together constitute an 'initiation' under Edwards is a legal question we review de novo .").

*Id*. at 415. The Magistrate Judge agrees with Petitioner on this point. The result is that the findings of historical fact by the state courts – what actually happened between Estep and Duncan – is a question on which the state courts' findings are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence, whereas those courts' application of law to those findings is subject to the contrary to or unreasonable application standard of AEDPA. *Van Hook* is a pre-AEDPA case which applies pre-AEDPA standards of review. *Id*. at 415. Those standards were materially changed by the AEDPA.

Petitioner claims that state courts' decisions are an unreasonable application of *Edwards v. Arizona*, 451 U.S. 477 (1981)[1]. That case makes clear that, once a person in custody invokes his right to counsel, no further interrogation may take place without an attorney unless the defendant initiates it. Here the state courts found, on the basis of evidence, that it was Petitioner who reinitiated the communication. Petitioner's first two grounds for relief should be denied.

Because the Ohio Court of Appeals decision is not an objectively unreasonable application of clearly established Supreme Court precedent, it is entitled to deference from this Court. Grounds One and Two should be denied on the merits.

---

[1] Petitioner actually claims that there were two Edwards violations, the one off camera where he says Estep initiated the conversation and the later one on camera where he says he again unequivocally invoked his right to counsel. (Renewed Motion, Doc. No. 18, at 2, n. 1). This latter claim was not presented to the state courts and in any event the transcript of the videotape, made part of the suppression hearing transcript, shows that the request for counsel was not unequivocal.

**Ground Three**

In his third Ground for Relief, Petitioner claims he was convicted on insufficient evidence. This states a claim for relief under the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

This claim was combined with a manifest weight of the evidence claim in Petitioner's third assignment of error on direct appeal. On the claim of insufficient evidence, the appeals court held:

> {¶ 42} We first address Duncan's claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

-12-

proved beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 43} Duncan was charged in the second count of the indictment with committing murder, under R.C. 2903.02(B). The essential elements of this offense that the state had to prove were that Duncan caused the death of Bobbi Jo Pyles as the proximate result of causing or attempting to cause physical harm to Bobbie Jo Pyles by means of a deadly weapon.

{¶ 44} Duncan's argument in this regard is that there is no evidence that he intended to cause harm to Bobbi Jo Pyles, and that the only evidence before the trier of fact was that the shooting was accidental. This argument is based upon the statements of Duncan that it was an accident and the 9-1-1 call where a female caller says the shooting was accidental.

{¶ 45} However, any fact may be proved by circumstantial evidence as well as by direct evidence. And, each is accepted as a reasonable method of proof of any fact. In reviewing the evidence, there is a substantial body of circumstantial evidence from which a reasonable trier of fact could infer that Duncan's act of shooting Pyles was not accidental and was done in anger.

{¶ 46} There was an ongoing argument between Duncan and Pyles during the day of the shooting. There were very recent bruises on the body of the victim that the jury could have inferred had come from a physical altercation between the two in the laundry room shortly prior to the shooting. Also, the victim's deathbed statement at the hospital, contrary to the 9-1-1 call, did not indicate that the shooting was accidental, and it could reasonably be inferred to manifest that she knew she had been deliberately shot, but that the argument that led to her shooting was her fault. The physical evidence developed from the crime scene, the distance from which the shot was fired, and the trajectory of the bullet do not comport with Duncan's initial statements to the police. The gun used did not have a "hair trigger" as Duncan claimed, and Duncan was experienced in the use of firearms. Finally, Duncan did not call 9-1-1 immediately after the shooting to seek assistance for his girlfriend's wounds.

> {¶ 47} Viewing this testimony in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt that Duncan caused the death of Bobbi Jo Pyles as the proximate result of causing or attempting to cause physical harm to her by means of a deadly weapon. Therefore, the trial court did not err in overruling Duncan's motion for acquittal pursuant to Crim.R. 29.

*State v. Duncan*, 2007 WL 2285087, ¶¶ 42-47 (Ohio App. 2nd Dist. Aug. 3, 2007).

Petitioner of course asserts that his statement to the police should have been suppressed. He argues, however,

> [E]ven without subtracting the evidence secured during the interrogation, there is simply insufficient evidence to establish that, "regardless of his purpose, Petitioner was aware that his conduct would probably cause physical harm to the victim." There is no evidence that Petitioner deliberately pointed the firearm at his fiancee and deliberately pulled the trigger shooting her in the chest.

Reply, Doc. No. 15, at 3.

Petitioner was convicted of reckless homicide as a lesser included offense of murder and of felony murder with the underlying felony being felonious assault. (See Verdict, Exhibit 5 to Return of Writ, Doc. No. 9.) It is the felony murder conviction which Petitioner challenges in this Ground for Relief and particularly the underlying felonious assault. Ohio Revised Code § 2903.11(A) provides

> No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

There is no requirement in the statute that the accused have acted "deliberately." The State was not

required to prove that Petitioner deliberately took the victim's life. As Petitioner appears to concede later in his Reply, the State was only required to prove that he acted knowingly. Under Ohio Revised Code § 2901.22(B), "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. . ." There was ample evidence before the jury that Petitioner was familiar with guns and that the murder weapon was his gun which he had fired many times before. The gun did not have a hair trigger, which was proved by independent evidence; the jury could have inferred that fact from knowing that this was a weapon Petitioner had fired many times before. It is common knowledge that when one points a loaded gun at another person and pulls the trigger, the probable result is either serious physical harm to the other person or at least some physical harm caused by means of a deadly weapon. There was no need for the State to present extra evidence of this common knowledge which it could, and obviously did, infer Petitioner possessed. As the Court of Appeals noted, separate evidence, also before the jury, refuted the claim of accident: the substantial bruising on the victim's body, the trajectory of the fatal bullet, the day-long argument which preceded the shooting. In sum, there was ample evidence from which a reasonable jury could conclude beyond a reasonable doubt that Petitioner committed felonious assault and therefore was guilty of felony murder when the victim died.

**Conclusion**

The Petition should be dismissed on the merits. Reasonable jurists could disagree with this conclusion as to Grounds One and Two, on which Petitioner should be given a certificate of appealability if he requests one and leave to appeal *in forma pauperis*. Reasonable jurists would not

disagree as to the third ground for relief, on which Petitioner should be denied a certificate of appealability if he requests one and leave to appeal *in forma pauperis*.

October 7, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).